## John W. Gammon and Asenath Gammon
### v.
## William C. Wright.

*Mortgages—Foreclosure—Note—Failure of Consideration—Partner-ship—Homestead and Dower—Evidence—Parties.*

1. Upon proceedings brought to foreclose a mortgage given to secure a note covering a certain portion of the purchase price of a fourth interest in a flouring mill, a conveyance of which was never made to the maker thereof, the contention being as to the existence of a partnership in the running of said mill, and whether the maker and payee were members thereof, this court holds as erroneous the decree of foreclosure of the trial court, the state of the pleadings forbidding the investigation of the question as to the existence or settlement of such alleged partnership.

2. The collection of a note and mortgage, given in consideration of an agreement to deliver therefor a business interest, can not be enforced in the absence of such conveyance or an offer to make the same.

3. It *seems* that the wife can not be deprived of her homestead in premises as to which she has joined in a mortgage, in consideration of a promise, which has not been performed, to make a conveyance of other property to her husband.

### [Opinion filed August 28, 1889.]

In error to the Circuit Court of Effingham County; the Hon. William C. Jones, Judge, presiding.

Messrs. Wood Bros. and S. F. Gilmore, for plaintiffs in error.

Mr. William B. Wright, for defendant in error.

Reeves, J. Early in the year 1884 one Hotz held a certif-icate of purchase, under a foreclosure sale, for the undivided three-fourths of a flouring mill property, at Effingham, Illinois. Defendant in error bought this certificate, and being desirous to associate with himself, in the ownership of the property, some one who was a practical miller, he made

an agreement with plaintiff in error, John W. Gammon, to sell him a third interest in the certificate, which would cover one-fourth of the mill property, for the sum of $2,166.66, Gammon to pay $500 cash, give a note for $1,000, and secure it by a mortgage on his homestead, and the balance of the purchase money was to be paid by his wages, as miller. The $500 cash was paid, and the one thousand dollar note given and secured by a mortgage on the homestead of the Gammons. Subsequently, the time of redemption having expired on the foreclosure sale, Wright received a deed from the master in chancery for three-fourths interest in the mill property, but made no conveyance of the one-fourth interest to Gammon. The mill was operated for two years and six months, and then shut down because it did not prove a financial success, and Wright took the exclusive possession of the property.

There is a dispute between Wright and Gammon as to how the mill was operated. Gammon claims that he was not a partner in the running of the mill, but was to receive wages for his work in the mill as head miller. Wright claims that the mill was operated by himself, John W. Gammon and James Gammon, a son of John, as partners. After the mill was shut down Wright sold the mill for $5,500, he having before this bought the remaining fourth interest in the property. This suit is to foreclose the $1,000 mortgage on the homestead of the Gammons. The bill is in the ordinary form, and contains no reference to the circumstances under which the mortgage was given, or what it was given for. Gammon and wife answered the bill, setting out in detail the facts as to the purchase by Gammon of one-fourth interest in the mill property from Wright, and the giving of note and mortgage in part payment of the purchase price, insisting that Gammon had paid in full the price, and that Wright had failed to convey to him one-fourth interest in the mill property, and had put it out of his power to do so by a sale and conveyance of the mill property to other parties, and so the consideration of the note had entirely failed.

Without any amendment of the bill the cause went to a

hearing, and on the trial Wright insisted that Gammon and his son, James, were partners with him in the running of the mill, and that upon a settlement of the partnership the share of the Gammons, of the losses, would more than absorb the $500 cash paid, the $1,000 note, and the amount due John W. Gammon for wages, and one-fourth of what the mill sold for. The Circuit Court so found and decreed a foreclosure of the mortgage. In the state of the pleadings it is quite clear that the case was not in condition to authorize the court to investigate the question of the existence or settlement of the alleged partnership, and for this reason alone the decree of the Circuit Court must be reversed. However, to expedite the final adjudication of the rights of the parties, we will briefly state our views of the law applicable to the state of facts disclosed by the record before us, without regard to the condition of the pleadings. The first conflict upon the facts of the case between the parties relates to the question, whether the Gammons were partners with Wright in the running of the mill. Wright says in substance: " February 28th I sold Gammon one-fourth interest in the mill, and he told me at that time he and his son, James, bought together, and all the time during the running of the mill, from their talk, I supposed them both interested, both c'aiming an interest. They were to pay me $2,250 and have one-third of the profits in running the mill, provided we did not have to pay Little anything for the use of his fourth interest in the mill. He was a full partner in the loss or gains to the extent of the one-third interest. I was to have $75, John W. $80, and James $50 per month."

John W. Gammon, on this point, says: " Wright told me if I would take one-fourth interest in the mill property he would buy it. I told him I had no money. He said I could have it for just what he paid, as I was a good miller and he wanted me there. I said if I had the money I would buy; that my son, James, had $500 which I could get. Wright said if I would give him a note for $1,000 and secure the same by a mortgage on my house he would take that. I said I wou'd do that, and he closed the trade with Hetz, and I paid him

$500 cash and gave him the $1,000 note and mortgage. I was to have it for one-third of $6,500. When the time of redemption on the Hotz certificate expired he was to get a deed and convey to me one-fourth interest in the mill property. I never stated to Wright that James was to have a part interest in the mill. There was never anything said to me about my receiving profits; I did not understand that I was to have any interest in the profits, nor was anything said about running the mill except this : Wright asked me how much money it would take to run the mill. I told him the former proprietors had $4,000 in working stock. He said he could not raise that much money, but could raise $3,000. I said $3,000 then would equal $4,000 at the time I referred to. Then he said, what wages do you want by the month ? I said I had been getting $80 per month, and he agreed to give it. That was all that was said. Wright never mentioned to me wages for himself. He asked what he could hire "Jim" for. I told him I thought for $50 per month.

James Gammon testified that he knew nothing about the contract between his father and Wright; that he paid $500 to Wright for his father, at his father's request, on the mill. I worked in the mill but had no pecuniary interest, either in the mill property or in running the mill. Several witnesses testified to their understanding of the way the mill was run; that it was operated by Wright and the Gammons, and this understanding was based on the fact that the Gammons exhibited great interest in the success of the milling business, hired hands to work in the mill, and were even consulted in matters relating to the operation of the mill. The Gammons claim that all they did in the running of the mill was what head millers usually do, where the proprietor is not a practical miller.

It will be seen that the question of partnership in the running of the mill is in great doubt, to say the least. In view of the fact that the burden of proving a partnership falls upon Wright, we do not feel, under the testimony before us, that it is necessary to discuss the rights of the parties upon the basis that there existed a partnership in the running of the

mill between the Gammons and Wright. If there was no partnership then it must be conceded that John W. Gammon was entitled to a deed for one-fourth interest in the mill property. It is shown that there was due him on wages $653.65, so that, counting the $500 cash, the one thousand dollar note and the balance due on wages, he had paid in full the price he agreed to pay for a fourth interest in the mill. As Wright had put it out of his power to convey to Gammon any interest in the mill property, the consideration of the one thousand dollar note, in this view of the case, has entirely failed.

But if it should be conceded that after the purchase by Gammon of the one-fourth interest in the mill property, he and his son and Wright entered into a partnership agreement to run the mill, and that, upon a settlement of that partnership there would be due to Wright a large sum, would this fact justify Wright in taking exclusive possession of the entire mill property, and in selling and conveying the three-fourths interest, which he owned, and also the one-fourth interest which he had sold and agreed to convey to Gammon, and in refusing to convey to Gammon, and still insisting upon collecting the $1,000 note and mortgage, which was given as part of the purchase price of the one-fourth interest in the mill? Is it not important that had the fact of such partnership existed, and it resulted as alleged, Wright might have filed and maintained, so far as John W. Gammon's rights were involved, a bill to settle the partnership, and subjected the interest of Gammon in the mill property to the payment of any balance due from him in such settlement? In that case Wright would have recognized the right of Gammon to the interest in the mill which he had sold him, and sought the interposition of the court to subject it to the payment of Gammon's share of the losses. This recognition of the right and title of Gammon in the mill property, in part payment of the price of which the note and mortgage in controversy were given, would at least give to Wright a color of right to enforce the collection of the note as against John W. Gammon; but in the state of the

case shown by the testimony of Wright himself, it can not be
fairly said that, having failed to comply with his contract by
which he secured this note and mortgage, that had no other
consideration than this contract of sale of one-fourth of the
mill property, Wright should be entitled to collect the note
and mortgage.

There is still another view of the case, which is this: Could
this homestead of Mrs. Gammon be taken from her to pay a
partnership debt of Gammon, when the only consideration
that ever moved from Wright to induce her to join in a
mortgage of her homestead, was Wright's agreement to con-
vey to her husband a one-fourth interest in the mill, which it
is conceded Wright never did or offered to do? Whatever
the talk, arrangement or understanding between Gammon and
Wright, there is no pretense that anything was ever said to
Mrs. Gammon except that the mortgage was executed in part
payment of the price of one-fourth interest in the mill prop-
erty.    She certainly understood, when she consented to
encumber her homestead, that it was a payment to that extent
on an interest in the mill property.    That was the only con-
sideration that supported the note, to secure which she mort-
gaged her homestead.    Whatever may be true under all that
is claimed by defendant in error as to the rights of John W.
Gammon, it would seem indisputable that, before the home-
stead of Mrs. Gammon could be taken from her, defendant
in error should have offered to convey a one-fourth interest
in the mill property to John W. Gammon, conditioned upon
payment of the balance of the purchase money if it had not
all been paid.    No such offer was made by Wright.    Whether
such a conveyance to her husband would have been of any
pecuniary advantage to Mrs. Gammon is not material, and
yet, had it been made, she would have acquired an inchoate
right of dower in the premises so conveyed.    If, as we have
seen, the only consideration of the note and mortgage was the
agreement of Wright to convey to John W. Gammon an
interest in the mill property, which he never did and never
offered to do, we do not see upon what equitable principle
he can expect to enforce the collection of the note and mort-
gage.

The decree of the Circuit Court is reversed and the cause remanded, with direction that leave be granted to the complainant to amend his bill, if he chooses so to do, and make new parties defendant.

*Reversed and remanded, with directions.*